UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GREENTHAL, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:16-cv-00041 |
| v. | § § § | JURY TRIAL DEMAND |
| RENE R. JOYCE, MICHAEL A. HEIM, JAMES W. WHALEN, JOE BOB PERKINS, RUTH I. DREESSEN, ROBERT B. EVANS, BARRY R. PEARL, and TARGA RESOURCES PARTNERS L.P., | § § § § § § § | |
| Defendants. | § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Richard Greenthal ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is a class action brought by Plaintiff on behalf of himself and the other public unitholders of Targa Resources Partners L.P. ("Targa LP" or the "Partnership"), other than Defendants (defined below) and their affiliates, against Targa and the members of the board of Targa Resources GP LLC, the general partner of Targa LP (the "Board" or the "Individual Defendants"), for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R.

240.14a-9, in connection with the proposed merger between Targa LP and Targa Resources Corp. ("Targa Corp.").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement pursuant to Section 14(a) of the Exchange Act (the "Registration Statement") to be filed with the SEC.  The Registration Statement recommends that Targa LP unitholders vote in favor of approving a proposed transaction (the "Proposed Transaction") whereby Targa Corp. will acquire Targa LP through a transaction by which each Targa LP unit will be exchanged for 0.62 shares of Targa Corp. stock.

3.     As discussed below, the consideration Targa LP's unitholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common unitholders of Targa LP.  Defendants have now asked Targa LP's unitholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the process leading up to the consummation of the Merger Agreement, including: i) certain details with respect to the sale process; ii) the financial analyses conducted by Citigroup Global Markets Inc. ("Citi"), financial advisor to the Targa LP conflicts committee; and iii) Targa LP's projected financial information.

4.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Targa LP's unitholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6.      Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Targa LP maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of Targa LP common units and has held such units since prior to the wrongs complained of herein.

9.      Individual Defendant Rene R. Joyce ("Joyce") has served as Executive Chairman of the Board of Targa Corp., the General Partner of Targa LP and TRI Resources Inc. ("TRI") (a subsidiary of Targa Corp.) since January 1, 2012, and as a director of Targa Corp. since its

formation on October 27, 2005, and of the General Partner of Targa LP since October 2006. Mr. Joyce previously served as Chief Executive Officer of Targa Corp. between October 27, 2005, and December 31, 2011, the General Partner of Targa LP between October 2006 and December 31, 2011, and TRI between February 2004 and December 31, 2011. Mr. Joyce also served on the board of Floridian Natural Gas Storage Co. LLC, a subsidiary of Targa Corp. In addition, Mr. Joyce holds 1,037,361 shares of Targa Corp. stock. Upon information and belief, Mr. Joyce is a citizen of the State of Texas.

10.     Individual Defendant Michael A. Heim ("Heim") has served as Vice Chairman of the board of directors of Targa Resources GP LLC, the general partner of Targa LP and as a full-time member of the executive team acting in an advisory role on commercial and operational matters, leading special projects, and utilizing his vast network of industry relationships and experience to support Targa since November 13, 2015. Mr. Heim served as President and Chief Operating Officer of Targa Corp., the General Partner of Targa LP and TRI since January 1, 2012. He also recently stepped down as CEO of TRI. Heim holds 508,808 shares of Targa Corp. stock. Upon information and belief, Mr. Heim is a citizen of the State of Texas.

11.     Individual Defendant James W. Whalen ("Whalen") has served as Executive Chairman of the Board of Targa Corp., the general partner of Targa LP and TRI since January 1, 2015, and as a director of Targa Corp. since its formation on October 27, 2005, of the General Partner of Targa LP since February 2007 and of TRI between 2004 and December 2010. Mr. Whalen previously served as Advisor to Chairman and CEO of Targa Corp. since January 1, 2012, and served as Executive Chairman of the Board of Targa Corp. and TRI between October 25, 2010, and December 31, 2011, and of the General Partner of Targa LP between December 15, 2010, and December 31, 2011. He also served as President-Finance and

Administration of Targa Corp. and Targa LP between January 2006 and October 2010 and the General Partner of Targa LP between October 2006 and December 2010 and for various Targa subsidiaries since November 2005.  He also serves on board of Floridian Natural Gas Storage Co. LLC (a Targa Corp. subsidiary).  In addition, Whalen holds 583,081 shares of Targa Corp. stock.  Upon information and belief, Mr. Whalen is a citizen of the State of Texas.

12.     Individual Defendant Joe Bob Perkins ("Perkins") has served as Chief Executive Officer and director of Targa Corp., the General Partner of Targa LP and TRI since January 1, 2012.  Mr. Perkins previously served as President of Targa Corp. between the date of its formation on October 27, 2005, and December 31, 2011, of the General Partner of Targa LP between October 2006 and December 31, 2011, and of TRI between February 2004 and December 31, 2011.  In addition, Mr. Perkins holds 527,134 shares of Targa Corp. stock.  Upon information and belief, Mr. Perkins is a citizen of the State of Texas.

13.     Individual Defendant Ruth I. Dreessen ("Dreessen") has served as a director of the General Partner of Targa LP since February 6, 2013.  Ms. Dreessen also served as a member of the Conflicts Committee of the General Partner of Targa LP.  Upon information and belief, Ms. Dreessen is a citizen of the State of Texas.

14.     Individual Defendant Robert B. Evans ("Evans") has served as a director of the General Partner of Targa LP since February 2007.  Mr. Evans also served as a member of the Conflicts Committee of the General Partner of Targa LP.  Upon information and belief, Mr. Evans is a citizen of the State of Texas.

15.     Individual Defendant Barry R. Pearl ("Pearl") has served as a director of the General Partner of Targa LP since February 2007.  Mr. Pearl also served as a member of the

Conflicts Committee of the General Partner of Targa LP.  Upon information and belief, Mr. Peal

is a citizen of the State of California.

16.     Defendant Targa LP is a Delaware limited partnership and is a party to the Merger

Agreement.

17.     Defendants identified in paragraphs 9-16 above are collectively referred to as

"Defendants," and Defendants identified in paragraphs 9-15 are collectively referred to as the

"Individual Defendants."

**CLASS ACTION ALLEGATIONS**

18.     Plaintiff brings this action on his own behalf and as a class action pursuant to

Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Targa LP common

units who are being and will be harmed by Defendants' actions described below (the "Class").

Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other

entity related to or affiliated with any Defendant.

19.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As

of December 3, 2015, there were over 184 million outstanding Targa LP common units.  The

holders of these units are believed to be geographically dispersed through the United States;

(b)     There are questions of law and fact which are common to the Class and

which predominate over questions affecting individual Class members.  The common questions

include, *inter alia*, the following:

> i.     Whether Defendants have violated Section 14(a) of the Exchange
>        act and Rule 14a-9 promulgated thereunder;
>
> ii.    Whether the Individual Defendants have violated Section 20(a) of
>        the Exchange Act; and

        iii.    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.    The Proposed Transaction Undervalues Targa LP

20.    Targa LP is a publicly traded Delaware limited partnership formed in October 2006 by Targa.  Its common units, which represent limited partner interests, are listed on the New York Stock Exchange under the symbol "NGLS."  Targa Resources GP LLC is a Delaware limited liability company formed by Targa in October 2006 to own a 2% general partner interest. Its primary business purpose is to manage Targa LP's affairs and operations.  Targa Resources GP LLC is an indirect wholly owned subsidiary of Targa.  As of September 30, 2015, Targa Corp. owned a 10.6% interest in Targa LP in the form of 3,772,397 general partner units and 16,309,594 common units.  In addition, Targa Resources GP LLC also owns Targa LP's

incentive distribution rights ("IDRs"), which entitle it to receive increasing cash distributions up to 48% of distributable cash for a quarter, exclusive of amounts reallocated to common unit-holders under the IDR Giveback Amendment.

21.     Targa LP is engaged in the business of gathering, compressing, treating, processing and selling natural gas; storing, fractionating, treating, transporting and selling natural gas liquids and natural gas liquid products; gathering, storing and terminaling crude oil; and storing, terminaling and selling refined petroleum products.

22.     The following chart reflects the organizational structure of the various Targa entities:



23.    If the merger is completed the various Targa entities will have the following structure:



24.     And while the market has recently suffered a significant decrease in oil and natural gas prices, Targa LP's long-term prospects remain solid.  Indeed, the Company's recent financial results have shown impressive growth.  On November 3, 2015, Targa reported Adjusted EBITDA of $305.8 million for the third quarter of 2015 compared to $248.8 million for the third quarter of 2014.  In addition, Targa LP's distributable cash flow for the third quarter of 2015 of $220.7 million corresponds to distribution coverage of approximately 1.1 times the $200.4

million in total distributions to be paid on November 13, 2015.  Following the release of third quarter results, Targa LP's Chief Financial Officer (Joe Bob Perkins), stated that "Targa's third quarter results highlight the benefits of our diverse asset footprint, fee-based margin and our continued focus on cost savings and execution."  Mr. Perkins also indicated that Targa LP continues "to develop attractive projects, demonstrate access to capital markets and execute in a cost effective manner, positioning Targa to successfully navigate the challenging environment ahead."

25.   Targa LP's third quarter results were ahead of analysts' estimates.

26.   Further, while Defendants are touting that the Merger Consideration represents a 18% premium to the closing price of Targa LP's units as of November 2, 2015, and to the 10 trading day volume –weighted average price of Targa LP common units for the period ended on November 2, 2015, this purported "premium" was calculated by assuming the implied value of transaction was $36.09 per common unit.[1]  However, there is no protective collar on the exchange ratio, and as a result, the implied dollar value of the Merger Consideration is susceptible to significant depreciation based upon the future performance of Targa Corp.'s stock. Significantly, as demonstrated by the chart below, since November 2, 2015, Targa Corp.'s stock price has fallen off a cliff, dropping from $58.21 to $26.42 on December 17, 2015 (**54.6%**).  As a result based on Targa Corp.'s closing stock price on December 17, 2015, the merger has implied consideration of a mere $16.38, which is a humungous negative premium to Targa LP's closing price of $30.49 the day before the Proposed Transaction was announced.  Moreover, no-where does the Registration Statement disclose whether Targa LP's financial advisor, Citi Group

---

[1] Targa Corp.'s stock closed at $58.21 on November 2, 2015.

LLC, continues to believe the transaction is fair in light of the declines in Targa Corp.'s stock price.



27.     The Proposed Transaction also translates to a distribution reduction of approximately 15-20%.

28.     Following the announcement of the merger, numerous analysts put price targets on Targa LP well above the implied merger consideration.  On November 4, 2015, RBC Capital Markets put a $42.00 price target on Targa LP, well above the implied value of the Proposed Transaction as of December 17, 2015.  In fact, the current implied value of Targa Corp.'s offer of $16.38 is even below RBC Capital Markets' November 4, 2015 "downside scenario" of $27.00 per unit.  Likewise, the same day, Credit Suisse put a $49 price target on Targa LP, roughly triple the implied merger consideration as of December 17, 2015.  In addition, Morgan Stanley placed a $62.00 price target on Targa LP on November 4, 2015.  Wunderlich placed a $56 price target on Targa LP.  On November 3, 2015 UBS put a $40.00 price target on Targa LP.

29.     Despite the Partnership's consistently improving financials and strong cash distribution to unitholders, the Board entered into the Merger Agreement for consideration that undervalues the Partnership.

B.      **The Unfair Sale Process**

30.      As described in the Registration Statement, the Proposed Transaction is the result of a disorganized, unfocused process that was designed to advance Targa Corp.'s interests at the expense of Targa LP's unitholders.  Indeed, the conflicted Board and senior management of the Partnership explored a range of transformative transactions, but failed to properly shop the Partnership in a manner that could generate the most advantageous transaction for Targa LP's public unitholders.  The inadequate Merger Consideration is the result of the conflicted Board's failure to control for obvious conflicts of interest, held by the majority of the board who were either board members of Targa Corp. and/or had substantial tied to Targa Corp.

31.      Targa LP and Targa Corp. are under common control.  This common control results in significant overlap between Targa Corp. and Targa LP, and even domination of the Partnership by Targa Corp.

32.      The Board has a total of seven members.  Of those seven members, four are also members of the Targa Corp. board or management.  The only remaining directors, Defendants Dreessen, Evans, and Pearl, comprise the Conflicts Committee.

33.      From the outset of the process, Targa LP and Targa Corp. intertwined the process. For example, on April 7, 2015, at a **joint** meeting of the boards of Targa LP and Targa Corp., Targa management presented forecasts based on different commodity price assumptions reflecting various distribution coverage and leverage implications.  Targa management also discussed Targa LP's financing alternatives.

34.      Similarly, on May 18, 2015, the Targa LP board held a meeting at which members of the Targa Corp. board were present.  During the meeting, representatives of an energy consulting firm provided an overview of the energy commodity markets during which the

consulting firm reviewed supply, demand and pricing for crude oil, natural gas and natural gas liquids.

35.     Between May 2015 and September 2015, the Targa LP board evaluated several potential acquisitions.  During this time period, Targa management repeatedly advised against the various potential acquisitions because of the potential impact of the continued uncertainty of commodity prices and E&P and midstream activity levels.

36.     During the summer and fall of 2015, in the context of continued uncertainty of commodity prices and E&P and midstream activity levels, Targa management evaluated several internal strategic alternatives, potential acquisitions of other companies, mergers of equals with other companies and potential acquisitions of Targa LP and Targa Corp. by other companies based on public information and analyst research estimates, without engaging in discussions with the managements of such companies.  Given continued uncertainty of commodity prices and E&P and midstream activity levels, Targa management was not able to identify an attractive third-party strategic alternative at such time.

37.     On or around September 16, 2015, **Targa Corp**., suggested that the Targa LP conflicts committee be contacted to initiate a process for evaluating the Proposed Merger and other potential strategic alternatives.  The next day, the Targa LP board authorized its conflicts committee to explore strategic alternatives and to retain its own financial and legal advisors. Later that day, the conflicts committee retained Richards, Layton & Finger, P.A. as its legal advisor.

38.     On September 22, 2015, the conflicts committee retained Citigroup as its financial advisor.

39.     On or around September 24, 2015, Targa Corp. suggested a potential transaction with an exchange ratio of 0.57 Targa Corp. shares per outstanding Targa LP unit.  Targa LP informed Targa Corp. on or around October 19, 2015, that this offer was too low.

40.     On October 26, 2015, the joint management of both Targa LP and Targa Corp. recommended for consideration of both boards an exchange ratio of 0.61 Targa Corp. common shares per Targa LP common unit.

41.     On November 1, 2015, the conflicts committee resolved to seek an increase in the exchange ratio to 0.66 Targa Corp. common shares per Targa LP common unit.  The same day, Targa Corp. countered with an exchange ratio of 0.62 Targa Corp. common shares per Targa LP common unit.  The conflicts committee swiftly agreed to approve Targa Corp.'s counteroffer the same day, without having contacted any third parties concerning a potential transaction. Notably, Targa LP agreed to the Proposed Transaction despite the continued uncertainty of commodity prices and E&P and midstream activity levels, which is precisely the reason the Targa LP board previously determined a third party was unlikely to acquire the Company at an appropriate price.

## C.     The Preclusive Deal Protection Devices

42.     In addition to failing to engage in a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to deter other suitors from submitting a superior offer for Targa LP.

43.     First, Section 6.3 of the Merger Agreement contains a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Targa Corp.

44.     Pursuant to § 6.3(c) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify Targa Corp. of the bidder's identity

and the terms of the bidder's offer.  Thereafter, § 6.3(c) demands that should the Board determine to enter into a superior competing proposal, it must grant Targa Corp. three days in which the Partnership must negotiate in good faith with Targa Corp. (if Targa Corp. so desires) and allow Targa Corp. to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

45.     In other words, the Merger Agreement gives Targa Corp. access to any rival bidder's information and allows Targa Corp. a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor Targa Corp., which can piggy-back upon the due diligence of the foreclosed second bidder.

46.     Moreover, pursuant to § 8.3, the Partnership also agreed to pay a termination fee of $96,500,000 if, among other things, the Partnership accepts a superior proposal.

47.     Ultimately, these preclusive deal protection devices restrain Targa LP's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership.

**D.     The Materially Incomplete and Misleading Registration Statement**

48.     On December 3, 2015, Defendants caused the Registration Statement to be filed with the SEC.  The information contained in the Registration Statement will be disseminated to Targa LP's unitholders to solicit their vote in favor of the Merger.  The Registration Statement denies the Partnership's unitholders material information concerning the financial and procedural fairness of the Merger.  Without such information, Targa LP unitholders cannot make a fully informed decision about whether to vote in favor of the Merger.

### *Disclosures Concerning the Insufficient Strategic Process*

49.     The Registration Statement fails to disclose the costs and benefits of preserving the current structure.

50.     The Registration Statement also fails to disclose the dollar value of the fees Citi has received over the past two years for the advisory services it has provided to Targa Corp. Such information is material to Targa LP's unitholders, as it will allow them to fairly assess whether TPH's fairness opinion was improperly influenced by conflicts of interest.

### *Disclosures Concerning Citi's Fairness Opinion*

51.     Regarding Citi's "Discounted Cash Flow Analyses," the Registration Statement fails to disclose (a) the identity, quantity, and source of the weighted average cost of capital assumptions for both companies; (b) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; and (c) whether stock-based compensation was treated as a cash or non-cash expense.

52.     Regarding Citi's "Selected Public Companies Analyses," the Registration Statement fails (a) to display the observed company-by-company pricing multiples and financial metrics examined by Citi; and (c) to disclose if other multiples were examined (if so, they should be disclosed).

53.     Regarding Citi's "Selected Precedent Transactions Analysis," the Registration Statement fails to disclose (a) the observed transaction-by-transaction  (i) enterprise values, (ii) pricing multiples, and (iii) financial metrics; and (b) whether other multiples and/or transaction premiums were examined (if so, they should be disclosed).

54.     The Registration Statement does not disclose whether Citi continues to believe the transaction is fair to Targa LP's unitholders following the significant decrease in Targa Corp.'s stock.

### *Disclosures Concerning Targa Corp.'s Projections*

55.     The Registration Statement does not disclose either Targa LP or Targa Corp.'s projections for stock-based compensation.

**E.     Defendants Knew or Negligently Disregarded that the Registration Statement Omits Material Information**

56.     The Individual Defendants knew or negligently disregarded that the Registration Statement omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

57.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Registration Statement before it was filed with the SEC.   Indeed, most of the Individual Defendants are signatories to the Registration Statement, and thus knew or should have known that the Registration Statement contains misleading partial disclosures of the history leading up to the Merger and the financial analyses performed by the respective financial advisors.

58.     Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning the various financial advisors' analyses which has been omitted from the Registration Statement, as well as the terms of all strategic alternatives discussed by Targa LP and its respective advisors, and thus knew or should have known that such information has been omitted.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the future value of Targa LP, Targa Corp., and the pro-forma company, certain key inputs and assumptions of the financial analyses performed by Citi in support of its fairness opinion, the financial analyses performed by Citi, and the value of certain strategic alternatives that were considered by the Partnership.

61.     In so doing, Defendants made materially incomplete and misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

62.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

63.     Specifically, and as detailed in ¶¶ 48-55 above, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the future

value of Targa LP, Targa Corp., and the pro-forma company; (ii) certain key inputs and assumptions of the financial analyses performed by Citi in support of its fairness opinion; (iii) the financial analyses performed by Citi; and (iv) the value of certain strategic alternatives that were considered by the Partnership.

64.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Citi both reviewed and discussed their financial analyses with the Board and the Conflicts Committee during various meetings, and further states that the Board and the Conflicts Committee considered the financial analyses provided by Citi as well as Citi's fairness opinion and the assumptions made and matters considered in connection therewith.  The Individual Defendants knew or should have known that the material information identified in ¶¶ 48-55 above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified in ¶¶ 48-55 above to be materially incomplete and misleading.

65.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

66.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Targa LP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Targa LP's General Partner, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board and the Conflicts Committee prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of each of the

Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

70.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

73.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants, jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

C.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 6, 2016.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720
tbilek@bileklaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Juan E. Monteverde
Miles Schreiner
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
Email: jmonteverde@faruqilaw.com
          mschreiner@faruqilaw.com

Derrick B. Farrell
20 Montchanin Road, Suite 145
Wilmington, DE  19807
Tel: 302-482-3182
Fax: 302-482-3612