UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GREENTHAL, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 4:16-cv-00041 |
| Plaintiff, | § | |
| | § | <u>JURY TRIAL DEMAND</u> |
| v. | § | |
| | § | |
| RENE R. JOYCE, MICHAEL A. HEIM, JAMES W. WHALEN, JOE BOB PERKINS, RUTH I. DREESSEN, ROBERT B. EVANS, BARRY R. PEARL, and TARGA RESOURCES PARTNERS L.P., | § § § § § | |
| | § | |
| Defendants. | § | |

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Richard Greenthal ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is a class action brought by Plaintiff on behalf of himself and the other public unitholders of Targa Resources Partners L.P. ("Targa L.P." or the "Partnership"), other than Defendants (defined below) and their affiliates, against Targa and the members of the board of Targa Resources GP LLC, the general partner of Targa L.P. (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Targa L.P. and Targa Resources Corp. ("Targa Corp.").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Proxy") to be filed with the SEC.  The Proxy recommends that Targa L.P. unitholders vote in favor of approving a proposed transaction (the "Proposed Transaction") whereby Targa Corp. will acquire Targa L.P. and each Targa L.P. unit will be exchanged for 0.62 shares of Targa Corp. stock.

3.     As discussed below, because the Targa L.P. Board did not obtain a protective collar on the exchange ratio, the consideration Targa L.P.'s unitholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common unitholders of Targa L.P.  Indeed, although the Proxy states the exchange ratio of 0.62 Targa Corp. shares for each Targa L.P. unit represents an implied value of $36.09 based upon the closing price of Targa Corp. stock on November 2, 2015, as of January 20, 2016, the transaction had an implied value of a mere $10.06, **roughly $26.03 per share lower than shortly before the Proposed Transaction was announced**.

4.     This is due to a radical downward shift in the oil and gas markets.  Despite this significant change, which had a greater negative impact on Targa Corp. than Targa L.P., the Board has done nothing to provide unitholders updated information so they can make an informed vote, instead leaving them with stale information which intervening events have rendered wholly unreliable and misleading.

5.     Not surprisingly in light of the facially inadequate consideration, the Proposed Transaction is irremediably marred by conflicts of interest because Targa L.P. is fundamentally controlled by Targa Corp. in every respect.  First, Targa Corp. is responsible for electing and

approving the members of the Targa L.P. Board – of the six members on the Targa L.P. Board, at least four are also employed in executive or board positions at Targa Corp. or Targa Resources GP LLC, the general partner of Targa LP. Similarly, all executive management personnel and employees of Targa L.P., including defendant Joe Bob Perkins ("Perkins"), Targa L.P.'s Chief Executive Officer ("CEO"), are employees of Targa Corp. Second, Targa Resources GP LLC – a wholly-owned subsidiary of Targa Corp. – is responsible for managing and controlling the business and affairs of Targa L.P. For its part, Targa Corp. is a publicly traded company on the New York Stock Exchange with quarterly shareholder earnings pressuring the company's bottom line. Thus, Targa Corp. had an interest in, and every ability to, effectuate a takeover of Targa L.P. on the cheap using its position of control on both sides of the transaction.

6. Indeed, as revealed by the Proxy, the Proposed Transaction is the product of a single-bidder process throughout which Defendant Perkins, occupying a dual role as CEO of both Targa L.P. and Targa Corp., brokered a deal for Targa Corp. to takeover Targa L.P. on the cheap, to the detriment of Targa L.P. unitholders. The process leading to the Proposed Transaction was tainted by conflicts of interest not the least of which is that Targa L.P. management played an integral role, despite their dual employment with Targa Corp., and Targa Corp.'s financial advisor, Evercore, offered substantive advisory services to both Targa L.P. and Targa Corp. throughout the sale process.

7. Defendants have now asked Targa L.P.'s unitholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete, stale, unreliable and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the process leading up to the

consummation of the Merger Agreement, including: i) updated projected and financial information; ii) the financial analyses conducted by Citigroup Global Markets Inc. ("Citi"), financial advisor to the Targa L.P. conflicts committee; and iii) certain projected financial information.

8. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Targa L.P.'s unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

10. Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Targa LP maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv)

Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff is, and has been at all relevant times, the owner of Targa L.P. common units and has held such units since prior to the wrongs complained of herein.

13.     Individual Defendant Rene R. Joyce ("Joyce") has served as Executive Chairman of the Board of Targa Corp., the General Partner of Targa L.P., and TRI Resources Inc. ("TRI") (a subsidiary of Targa Corp.) since January 1, 2012, and as a director of Targa Corp. since its formation on October 27, 2005, and of the General Partner of Targa L.P. since October 2006. Mr. Joyce previously served as Chief Executive Officer of Targa Corp. between October 27, 2005, and December 31, 2011, the General Partner of Targa L.P. between October 2006 and December 31, 2011, and TRI between February 2004 and December 31, 2011. Mr. Joyce also served on the board of Floridian Natural Gas Storage Co. LLC, a subsidiary of Targa Corp. In addition, Mr. Joyce holds 1,037,361 shares of Targa Corp. stock. Upon information and belief, Mr. Joyce is a citizen of the state of Texas.

14.     Individual Defendant Michael A. Heim ("Heim") has served as Vice Chairman of the board of directors of Targa Resources GP LLC, the general partner of Targa L.P. and as a full-time member of the executive team acting in an advisory role on commercial and operational matters, leading special projects, and utilizing his vast network of industry relationships and experience to support Targa since November 13, 2015. Mr. Heim served as President and Chief Operating Officer of Targa Corp., the General Partner of Targa Partners and TRI since January 1, 2012. He also recently stepped down as CEO of TRI. Heim holds 508,808 shares of Targa Corp. stock. Upon information and belief, Mr. Heim is a citizen of the state of Texas.

15.     Individual Defendant James W. Whalen ("Whalen") has served as Executive Chairman of the Board of Targa Corp., the general partner of Targa L.P., and TRI since January 1, 2015 and as a director of Targa Corp. since its formation on October 27, 2005, of the General Partner of Targa L.P. since February 2007 and of TRI between 2004 and December 2010. Mr. Whalen previously served as Advisor to Chairman and CEO of Targa Corp. since January 1, 2012, and served as Executive Chairman of the Board of Targa Corp. and TRI between October 25, 2010, and December 31, 2011, and of the General Partner of Targa L.P. between December 15, 2010, and December 31, 2011.    He also served as President-Finance and Administration of Targa Corp. and Targa L.P. between January 2006 and October 2010 and the General Partner of Targa L.P. between October 2006 and December 2010 and for various Targa subsidiaries since November 2005.  He also serves on board of Floridian Natural Gas Storage Co. LLC (a Targa Corp. subsidiary).  In addition, Whalen holds 583,081 shares of Targa Corp. stock.  Upon information and belief, Mr. Whalen is a citizen of the state of Texas.

16.     Individual Defendant Joe Bob Perkins ("Perkins") has served as Chief Executive Officer and director of Targa Corp., the General Partner of Targa L.P. and TRI since January 1, 2012.    Mr. Perkins previously served as President of Targa Corp. between the date of its formation on October 27, 2005, and December 31, 2011, of the General Partner of Targa L.P. between October 2006 and December 31, 2011, and of TRI between February 2004 and December 31, 2011.  In addition, Mr. Perkins holds 527,134 shares of Targa Corp. stock.  Upon information and belief, Mr. Perkins is a citizen of the state of Texas.

17.     Individual Defendant Ruth I. Dreessen ("Dreessen") has served as a director of the General Partner of Targa L.P. since February 6, 2013.  Ms. Dreessen also served as a member

of the Conflicts Committee of the General Partner of Targa L.P. Upon information and belief, Ms. Dreessen is a citizen of the state of Texas.

18.     Individual Defendant Robert B. Evans ("Evans") has served as a director of the General Partner of Targa L.P. since February 2007. Mr. Evans also served as a member of the Conflicts Committee of the General Partner of Targa L.P. Upon information and belief, Mr. Evans is a citizen of the state of Texas.

19.     Individual Defendant Barry R. Pearl ("Pearl") has served as a director of the General Partner of Targa L.P. since February 2007. Mr. Pearl also served as a member of the Conflicts Committee of the General Partner of Targa L.P. Upon information and belief, Mr. Peal is a citizen of the state of California.

20.     Defendant Targa L.P. is a Delaware limited partnership, and is a party to the Merger Agreement.

21.     Defendants identified in paragraphs 13-20 are collectively referred to as "Defendants," and Defendants identified in paragraphs 13-19 are collectively referred to as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Targa L.P. common units who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of December 3, 2015, there were over 184 million outstanding Targa L.P. common units.  The holders of these units are believed to be geographically dispersed through the United States;

(b)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i.     Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii.     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**SUBSTANTIVE ALLEGATIONS**

**A.      Partnership Background and Its Poise for Growth**

24.      Headquartered in Houston, Texas, Targa L.P. is a leading provider of midstream NGL services in the United States that was formed in October 2006 to own, operate, acquire and develop a diversified portfolio of complementary midstream energy assets.  The Partnership is engaged in the business of gathering, compressing, treating, processing and selling natural gas, and storing, fractionating, treating, transporting, and selling NGLs and NGL products.

25.      The Partnership has historically performed well finically.  Targa L.P. just recently completed the offering of nearly $1.1 billion in senior unsecured notes.  The offering was announced on January 15, 2015, and designed to fund Targa L.P.'s then-current tender offer for any and all of the outstanding $500.0 million aggregate principal amount of the 6 5/8% Senior Notes due 2020, $400.0 million aggregate principal amount of the 4 3/4% Senior Notes due 2021 and $650.0 million aggregate principal amount of the 5 7/8% Senior Notes due 2023 previously issued.

26.      As a testament to the Partnership's financial strength, shortly thereafter Targa Corp. announced an increase in its quarterly dividend and distribution. Targa Corp. announced on January 21, 2015 that its board of directors had declared a quarterly cash dividend of $3.10 per common share on an annualized basis for the fourth quarter 2014.  The approved dividend represented an increase of approximately 6% over the previous quarter's dividend and 28% over the dividend for the fourth quarter 2013. For its part, Targa L.P. issued a quarterly cash distribution of $3.24 per common unit on an annualized basis, for the fourth quarter 2014.  The approved distribution represented an increase of approximately 2% over the previous quarter's distribution and 8% over the distribution for the fourth quarter 2013.

27.     The Partnership was also expanding – on February 2, 2015, Targa L.P. announced it had commenced a change-of-control cash tender offer for any and all of the outstanding $500.0 million aggregate principal amount of the 6 5/8% Senior Notes due 2020 issued by Atlas Pipeline Partners, L.P. and Atlas Pipeline Finance Corporation.   The offer was made in connection with, and conditioned upon, the consummation of a proposed merger with both Atlas entities.   The offer was successfully completed and announced on February 26, 2015.   The following day, Targa L.P. announced that it had completed the acquisitions of Atlas Pipeline Partners, L.P. and Atlas Energy, L.P, respectively.

28.     On May 5, 2015, Targa L.P. announced first quarter 2015 financial results.   The Partnership reported earnings before interest, income taxes, depreciation and amortization and other non-cash items ("Adjusted EBITDA") of $257.9 million for the first quarter of 2015 compared to $234.2 million for the first quarter of 2014.   Additionally, the Partnership's pro forma first quarter 2015 distributable cash flow, including the full contribution in the quarter from its merger with Atlas Pipeline Partners L.P., was $227.7 million which corresponded to pro forma distribution coverage of approximately 1.2 times the $193.9 million in total distributions to be paid later than month.   Defendant Perkins noted Targa L.P.'s "strong performance" and concluded the Partnership was "well-positioned."

29.     That summer, on July 21, 2015, Targa Corp. again increased its dividends based on Targa L.P.'s cash flows.   Targa Corp. declared a quarterly cash dividend $3.50 per common share on an annualized basis, for the second quarter 2015.   The approved dividend represented an increase of approximately 5% over the previous quarter's dividend and 27% over the dividend for the second quarter 2014.   Targa L.P.'s divided was also increased – to $3.30 per common unit on an annualized basis. The approved distribution represented an increase of approximately

1% over the previous quarter's distribution and 6% over the distribution for the second quarter 2014.

30.     The Partnership's early financial success in 2015 also continued into the second quarter.   On August 4, 2015, Targa L.P. announced second quarter 2015 financial results including "adjusted EBITDA" of $303.2 million for the second quarter of 2015 compared to $228.7 million for the second quarter of 2014.  Defendant Perks lauded the results:

> Targa's strong results through the first half of 2015 are reflective of the execution, diversity and resiliency of our businesses, and of the successful integration of the assets acquired in our mergers at the end of February. Our volume growth in Field Gathering & Processing through the first half of the year results from our positioning in some of the most active basins, and complements Targa's premier downstream business. Our results are driving quarter-over-quarter distribution and dividend growth consistent with our expectations for the year.

31.     Most recently, on November 3, 2015, Targa L.P. reported earnings results for its third quarter 2015.  Adjusted EBITDA for the quarter was $305.8 million, an increase of 23% compared to the same period last year.   In commenting on these results, Defendant Perkins remarked, "Targa's third quarter results highlight the benefits of our diverse asset footprint, fee-based margin and our continued focus on cost savings and execution.  We continue to develop attractive projects, demonstrate access to capital markets and execute in a cost effective manner, positioning Targa to successfully navigate the challenging environment ahead."

32.     Yet despite the Partnership's historical performance and poise for future success, Defendants have entered into the Merger Agreement for inadequate consideration, thus depriving the Plaintiff and the public unitholders of the Company the opportunity to participate in the growth of the Partnership they have loyally invested in – and without so much as informing Targa L.P. unitholders of the material facts relating to the Proposed Transaction.

**B.     Targa L.P. Is Materially Controlled by Targa Corp.**

33.     Targa L.P.'s First Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement") provides for a general partner of Targa L.P. rather than a board of directors.  Pursuant to the Partnership Agreement, Targa Resources GP LLC manages and controls the business and affairs of the Partnership.  Targa Resources GP LLC is the wholly-owned subsidiary of Targa Corp.

34.     In addition, Targa Corp. operates and controls Targa L.P. in all material respects through its ownership of general and limited partner interests, including incentive distribution rights ("IDRs"), in Targa L.P.  Targa Corp. indirectly owns (1) a 2% general partner interest in Targa L.P. (through which it holds its 100% ownership in LLC), (2) a special general partner interest in Targa L.P. representing retained tax benefit related to the contribution to Targa L.P. from Targa Corp. of the general partner interest in Targa Pipeline Partners LP, (3) all of Targa L.P.'s outstanding incentive distribution rights and (4) approximately 8.8% of the outstanding Targa L.P. common units. Corp also exerts influence over Targa L.P. through its sole ownership of Targa Resources GP LLC.

35.     Targa Corp.'s primary business objective is to increase dividends to its own unitholders by assisting the Partnership in executing its business strategy.  Moreover, Targa Corp.'s cash flows are generated exclusively from the cash distributions it receives from the Partnership.  To control Targa L.P.'s business strategy and ensure its own cash flows, Targa Corp. also controls the members appointed to the Targa L.P. Board and employs all of the executive management personnel and employees of Targa L.P. at Targa Corp.  In total, four of the six members of the Targa L.P. Board are also employed in executive or board positions at Targa Corp, or Targa Resources GP LLC, and all executive management personnel and employees of Targa L.P. are employees of Targa Corp.

36.     As employees of Targa Corp., Defendants Perkins, Joyce, Whalen, and Dreessen, and every member of the Targa L.P. executive management, had every incentive to favor a transaction favorable to Corp and preserve their positions, regardless of the effect on Targa L.P. unitholders.  Despite this, no effort was made to recuse them from the sales process and in fact, Defendant Dreessen was even appointed to the Conflicts Committee charged with evaluating the Proposed Transaction.  Moreover, the entire majority conflicted Board ultimately approved the Proposed Transaction and recommended it to Targa L.P. unitholders as fair from a financial point of view.

**C.      The Proposed Transaction Undervalues Targa L.P.**

37.     Targa L.P. is a publicly traded Delaware limited partnership formed in October 2006 by Targa.  Its common units, which represent limited partner interests, are listed on the New York Stock Exchange under the symbol "NGLS."  Targa Resources GP LLC is a Delaware limited liability company formed by Targa in October 2006 to own a 2% general partner interest. Its primary business purpose is to manage Targa L.P.'s affairs and operations.  Targa Resources GP LLC is an indirect wholly owned subsidiary of Targa.  As of September 30, 2015, Targa Corp. owned a 10.6% interest in Targa L.P. in the form of 3,772,397 general partner units and 16,309,594 common units.  In addition, Targa Resources GP LLC also owns Targa L.P.'s incentive distribution rights ("IDRs"), which entitle it to receive increasing cash distributions up to 48% of distributable cash for a quarter, exclusive of amounts reallocated to common unit-holders under the IDR Giveback Amendment.

38.     Targa, L.P. is engaged in the business of gathering, compressing, treating, processing and selling natural gas; storing, fractionating, treating, transporting and selling natural gas liquids and natural gas liquid products; gathering, storing and terminaling crude oil; and storing, terminaling and selling refined petroleum products.

39.     The following chart reflects the organizational structure of the various Targa entities:



40.     If the merger is completed the various Targa entities will have the following structure:



41.    And while the market has recently suffered a significant decrease in oil and natural gas prices, Targa L.P.'s long-term prospects remain solid.  Indeed, the Company's recent financial results have shown impressive growth.  On November 3, 2015, Targa reported Adjusted EBITDA of $305.8 million for the third quarter of 2015 compared to $248.8 million for the third quarter of 2014.  In addition, Targa L.P.'s distributable cash flow for the third quarter of 2015 of $220.7 million corresponds to distribution coverage of approximately 1.1 times the $200.4 million in total distributions to be paid on November 13, 2015.  Following the release of third

quarter results, Targa L.P.'s Chief Financial Officer (Joe Bob Perkins), stated that "Targa's third quarter results highlight the benefits of our diverse asset footprint, fee-based margin and our continued focus on cost savings and execution."  Mr. Perkins also indicated that Targa L.P. continues "to develop attractive projects, demonstrate access to capital markets and execute in a cost effective manner, positioning Targa to successfully navigate the challenging environment ahead."

42.    Targa L.P.'s third-quarter results were ahead of analysts' estimates.

43.    Further, while Defendants are touting that the Merger Consideration represents a 18% premium to the closing price of Targa L.P.'s units as of November 2, 2015, and to the 10 trading day volume –weighted average price of Targa L.P. common units for the period ended on November 2, 2015, this purported "premium" was calculated by assuming the implied value of transaction was $36.09 per common unit.[1]  However, there is no protective collar on the exchange ratio, and as a result, the implied dollar value of the Merger Consideration is susceptible to significant depreciation based upon the future performance of Targa Corp.'s stock. Significantly, as demonstrated by the chart below, since November 2, 2015, Targa Corp.'s stock price has fallen off a cliff, dropping from $58.21 to $26.42 on December 17, 2015 (**54.6%**).  As a result based on Targa Corp.'s closing stock price on December 17, 2015, the merger has implied consideration of a mere $16.38, which is a humungous negative premium to Targa L.P.'s closing price of $30.49 the day before the Proposed Transaction was announced.  Moreover, no-where does the Proxy disclose whether Targa L.P.'s financial advisor, Citi Group LLC, continues to believe the transaction is fair in light of the declines in Targa Corp.'s stock price.

---

[1] Targa Corp.'s stock closed at $58.21 on November 2, 2015.



44.     The Proposed Transaction also translates to a distribution reduction of approximately 15-20%.

45.     Following the announcement of the merger, numerous analysts put price targets on Targa L.P. well above the implied merger consideration.  On November 4, 2015, RBC Capital Markets put a $42.00 price target on Targa L.P., well above the implied value of the Proposed Transaction as of December 17, 2015.  In fact, the current implied value of Targa Corp.'s offer of $16.38 is even below RBC Capital Markets' November 4, 2015 "downside scenario" of $27.00 per unit.  Likewise, the same day Credit Suisse put a $49 price target on Targa L.P., roughly triple the implied merger consideration as of December 17, 2015.  In addition, Morgan Stanley placed a $62.00 price target on Targa L.P. on November 4, 2015.  Wunderlich placed a $56 price target on Targa L.P.  On November 3, 2015, UBS put a $40.00 price target on Targa L.P.

46.     Despite the Partnership's consistently improving financials and strong cash distribution to unitholders, the Board entered into the Merger Agreement for consideration that undervalues the Partnership.

**D.** **The Unfair Sale Process**

47. As described in the Proxy, the Proposed Transaction is the result of a disorganized, unfocused process that was designed to advance Targa Corp.'s interests at the expense of Targa L.P.'s unitholders. Indeed, the conflicted Board and senior management of the Partnership explored a range of transformative transactions, but failed to properly shop the Partnership in a manner that could generate the most advantageous transaction for Targa L.P.'s public unitholders. The inadequate Merger Consideration is the result of the conflicted Board's failure to control for obvious conflicts of interest, held by the majority of the board who were either board members of Targa Corp. and/or had substantial tied to Targa Corp.

48. Targa L.P. and Targa Corp. are under common control. This common control results in significant overlap between Targa Corp. and Targa L.P., and even domination of the Partnership by Targa Corp.

49. The Board has a total of seven members. Of those seven members, four are also members of the Targa Corp. board or management. The only remaining directors, Defendants Defendants Dreessen, Evans, Pearl comprise the Conflicts Committee.

50. From the outset of the process, Targa L.P. and Targa Corp. intertwined the process. For example, on April 7, 2015, at a **joint** meeting of the boards of Targa L.P. and Targa Corp., Targa management presented forecasts based on different commodity price assumptions reflecting various distribution coverage and leverage implications. Targa management also discussed Targa L.P.'s financing alternatives.

51. Similarly, on May 18, 2015, the Targa L.P. Board held a meeting at which members of the Targa Corp. Board were present. During the meeting representatives of an energy consulting firm provided an overview of the energy commodity markets during which the

consulting firm reviewed supply, demand and pricing for crude oil, natural gas and natural gas liquids.

52.     Between May 2015 and September 2015, the Targa L.P. board evaluated several potential acquisitions.  During this time period Targa management repeatedly advised against the various potential acquisitions because of the potential impact of the continued uncertainty of commodity prices and E&P and midstream activity levels.

53.     During the summer and fall of 2015, in the context of continued uncertainty of commodity prices and E&P and midstream activity levels, Targa management evaluated several internal strategic alternatives, potential acquisitions of other companies, mergers of equals with other companies and potential acquisitions of Targa L.P. and Targa Corp. by other companies based on public information and analyst research estimates, without engaging in discussions with the managements of such companies.  Given continued uncertainty of commodity prices and E&P and midstream activity levels, Targa management was not able to identify an attractive third-party strategic alternative at such time.

54.     On or around September 16, 2015, **Targa Corp**., suggested that the Targa L.P. conflicts committee be contacted to initiate a process for evaluating the Proposed Merger and other potential strategic alternatives.  The next day the Targa L.P. board authorized its conflicts committee to explore strategic alternatives and to retain its own financial and legal advisors. Later that day the conflicts committee retained Richards, Layton & Finger, P.A. as its legal advisor.

55.     On September 22, 2015, the conflicts committee retained Citigroup as its financial advisor.

56.     On or around September 24, 2015, Targa Corp. suggested a potential transaction with an exchange ratio of 0.57 Targa Corp. shares per outstanding Targa L.P. unit.  Targa L.P. informed Targa Corp. on or around October 19, 2015 that this offer was too low.

57.     On October 26, 2015, the joint management of both Targa L.P. and Targa Corp. recommended for consideration of both boards an exchange ratio of 0.61 Targa Corp. common shares per Targa L.P. common unit.

58.     On November 1, 2015, the conflicts committee resolved to seek an increase in the exchange ratio to 0.66 Targa Corp. common shares per Targa L.P. common unit.  The same day Targa Corp. countered with an exchange ratio of 0.62 Targa Corp. common shares per Targa L.P. common unit.   The conflicts committee swiftly agreed to approve Targa Corp.'s counteroffer the same day, without having contacted any third parties concerning a potential transaction.   Notably, Targa L.P. agreed to the Proposed Transaction despite the continued uncertainty of commodity prices and E&P and midstream activity levels, which is precisely the reason the Targa L.P. Board previously determined a third party was unlikely to acquire the Company at an appropriate price.

**E.      The Preclusive Deal Protection Devices**

59.     In addition to failing to engage in a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to deter other suitors from submitting a superior offer for Targa L.P.

60.     First, Section 6.3 of the Merger Agreement contains a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Targa Corp.

61.     Pursuant to § 6.3(c) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify Targa Corp. of the bidder's identity

and the terms of the bidder's offer. Thereafter, § 6.3(c) demands that should the Board determine to enter into a superior competing proposal, it must grant Targa Corp. three days in which the Partnership must negotiate in good faith with Targa Corp. (if Targa Corp. so desires) and allow Targa Corp. to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

62. In other words, the Merger Agreement gives Targa Corp. access to any rival bidder's information and allows Targa Corp. a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor Targa Corp., which can piggy-back upon the due diligence of the foreclosed second bidder.

63. Moreover, pursuant to § 8.3, the Partnership also agreed to pay a termination fee of $96,500,000 if, among other things, the Partnership accepts a superior proposal.

64. Ultimately, these preclusive deal protection devices restrain Targa L.P.'s ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership.

**F.     The Materially Incomplete and Misleading Proxy**

65. On December 3, 2015, Defendants caused the Proxy to be filed with the SEC. The information contained in the Proxy will be disseminated to Targa L.P.'s unitholders to solicit their vote in favor of the Merger. The Proxy denies the Partnership's unitholders material information concerning the financial and procedural fairness of the Merger. Without such information, Targa L.P. unitholders cannot make a fully informed decision about whether to vote in favor of the Merger.

***Targa LP Owed a Duty to Update Its Disclosures***

66. Crucially, the Targa LP Board owed a duty to provide unitholders with updated information because intervening events have rendered Targa LP's projections and the opinions of the conflict committee's financial advisor stale and misleading. More specifically, Targa LP has repeatedly warned investors in its SEC filings, that it and Targa Corp.'s financial results are significantly impacted by the commodity prices for natural gas, natural gas liquids and crude oil. As demonstrated by the charts below since the November 3, 2015 announcement of the merger, commodity prices for natural gas, natural gas liquids and crude oil have plummeted.



67. As a result the implied value of the transaction value has fallen from the $36.09 value disclosed in Targa LP's Definitive Proxy Statement to $10.56 as of January 18, 2016. As a result of this radical shift in commodity prices, Targa LP's and Targa Corp.'s projections, which the Delaware Court of Chancery has described as "the most highly –prized disclosures by investors," are wholly unreliable. Therefore, Targa LP, has a duty to provide unitholders updated projected financial information so they can make an informed vote. Moreover, because

Targa LP's projections were a key input to its financial advisor's Discounted Cash Flow Analyses for both Targa LP and Targa Corp. those disclosures must also be updated.

68.     In addition, the shift in commodity prices has also rendered Citi's "Selected Public Companies Analyses" misleading and unreliable.   Since the announcement of the transaction, the trading price of Targa LP's comparable companies have declined an average of 30.8%, with a median decline of 29.9%.   The trading price of Targa Corp.'s peers has declined even more, with an average decline of 37.5% and a median decline of 36.3%.   As a result the Board owes a duty to obtain and disclose updated financial information from Citi so unitholders can make an informed decision on how to vote.

69.     Finally, because Targa Corp.'s peers were more adversely affected by the change in commodity prices than Targa LP's peers, Targa Corp. is getting a much better deal than it originally bargained for because it is buying a more valuable partnership with stock that is worth less.   Thus, the Board owes a duty to unitholders to inform them regarding whether accepting the Merger Consideration is still in unitholders' best interests.

### *Disclosures Concerning Citi's Fairness Opinion*

70.     Regarding Citi's "Discounted Cash Flow Analyses," the Proxy fails to disclose (a) the identity, quantity, and source of the weighted average cost of capital assumptions for both companies; (b) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; and (c) whether stock-based compensation was treated as a cash or non-cash expense.

71.     Regarding Citi's "Selected Public Companies Analyses," the Proxy fails (a) to display the observed company-by-company pricing multiples and financial metrics examined by Citi; and (c) to disclose if other multiples were examined (if so, they should be disclosed).

72.     Regarding Citi's "Selected Precedent Transactions Analysis," the Proxy fails to disclose (a) the observed transaction-by-transaction (i) enterprise values, (ii) pricing multiples, and (iii) financial metrics; and (b) whether other multiples and/or transaction premiums were examined (if so, they should be disclosed).

### ***Disclosures Concerning Targa Corp.'s Projections***

73.     The Proxy does not disclose either Targa L.P. or Targa Corp.'s projections for stock-based compensation.

### G.     **Defendants Knew or Negligently Disregarded that the Proxy Omits Material Information**

74.     The Individual Defendants knew or negligently disregarded that the Proxy omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

75.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC.  Indeed, most of the Individual Defendants are signatories to the Proxy, and thus knew or should have known that the Proxy contains misleading partial disclosures of the history leading up to the Merger and the financial analyses performed by the respective financial advisors.

76.     Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning the various financial advisors' analyses which has been omitted from the Proxy, as well as the terms of all strategic alternatives discussed by Targa L.P. and its respective advisors, and thus knew or should have known that such information has been omitted.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.     Defendants have issued the Proxy with the intention of soliciting unitholder support for the Proposed Transaction.   Each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things, the future value of Targa L.P., Targa Corp., and the pro-forma company, certain key inputs and assumptions of the financial analyses performed by Citi in support of its fairness opinion, the financial analyses performed by Citi, and the value of certain strategic alternatives that were considered by the Partnership.

79.     In so doing, Defendants made materially incomplete and misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

80.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

81.     Specifically, and as detailed in ¶¶ 48-55 above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the future value of Targa L.P.,

Targa Corp., and the pro-forma company; (ii) certain key inputs and assumptions of the financial analyses performed by Citi in support of its fairness opinion; (iii) the financial analyses performed by Citi; and (iv) the value of certain strategic alternatives that were considered by the Partnership.

82.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Citi both reviewed and discussed their financial analyses with the Board and the Conflicts Committee during various meetings, and further states that the Board and the Conflicts Committee considered the financial analyses provided by Citi as well as Citi's fairness opinion and the assumptions made and matters considered in connection therewith.  The Individual Defendants knew or should have known that the material information identified in ¶¶ 48-55 above has been omitted from the Proxy, rendering the sections of the Proxy identified in ¶¶ 48-55 above to be materially incomplete and misleading.

83.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

84.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

85.     The Individual Defendants acted as controlling persons of Targa L.P. within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Targa L.P.'s General Partner, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

86.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

87.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board and the Conflicts Committee prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants

to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

88.      In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

89.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

90.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

91.      Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants, jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 22, 2016.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____

Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX 77002
(713) 227-7720
tbilek@bileklaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Juan E. Monteverde
Miles Schreiner
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
Email: jmonteverde@faruqilaw.com
           mschreiner@faruqilaw.com

Derrick B. Farrell
20 Montchanin Road, Suite 145
Wilmington, DE  19807
Tel: 302-482-3182
Fax: 302-482-3612