United States District Court
Southern District of Texas

**ENTERED**

January 29, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GREENTHAL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-41 |
| | § | |
| RENE R. JOYCE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Pending before the Court are Plaintiff's Motion to Expedite Discovery (Document No. 8) and Plaintiff's Motion for a Temporary Restraining Order ("TRO") (Document No. 9). Defendants have filed a Response thereto (Document No. 13). The Court held an Injunction Hearing on January 28, 2016 at 2PM. Having considered the parties' arguments at the hearing, these filings, the facts in the record, and the applicable law, the Court concludes Plaintiff's Motion to Expedite Discovery is DENIED and Plaintiff's Motion for a TRO is DENIED.

**Background**

Plaintiff Richard Greenthal ("Greenthal") filed a Class Action Complaint for Violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (Document No. 1). Greenthal's Complaint was consolidated with *John F. Lindeman v. Targa Resources Partners, L.P. et al.*, Case No. 4:16-cv-165 (Document No. 3-1). Greenthal then filed an amended Complaint (Document No. 5). Greenthal is a public unitholder of Targa Resources Partners L.P. ("Targa L.P.") and brings this class action on behalf of himself and other public unitholders. *Id.* at 1. The Complaint relates to a proposed merger between Targa L.P. and Targa Resources Corp. ("Targa Corp."), "whereby Targa Corp. will acquire Targa L.P. and each Targa L.P. unit will be

exchanged for 0.62 shares of Targa Corp. stock." *Id*. at 1-2. Plaintiff alleges that Defendants have violated the Exchange Act "by causing a materially incomplete and misleading Proxy Statement," which recommends that Targa L.P. unitholders vote in favor of the merger. *Id*. at 2. The proxy statement "states the exchange ratio of 0.62 Targa Corp. shares for each Targa L.P. unit represents an implied value of $36.09 based upon the closing price of Targa Corp. stock on November 2, 2015, [but] as of January 20, 2016, the transaction had an implied value of a mere $10.06." *Id*.  Plaintiff therefore seeks expedited discovery in this case (Document No. 8), and a TRO enjoining the vote on the merger "until Defendants disclose certain material information concerning the Proposed Transaction that has been omitted from the definitive proxy" (Document No. 9 at 1).

**Legal Standards**

*TRO*

To warrant a preliminary injunction or a TRO under Fed. R. Civ. P. 65, a party must show four elements: (1) a substantial likelihood of success on the merits of its claims; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied will outweigh any harm that will result if the injunction is granted; and (4) that the granting of an injunction will not disserve the public interest. *Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 763 (S.D. Tex. 2008). The movant must "clearly carr[y] the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

*Expedited Discovery*

Under Fed. R. Civ. P. 26(d), "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial

disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." "Although the Federal Rules do not provide a standard for the court to use in exercising its authority to order expedited discovery, it is generally accepted that courts use one of the following two standards to determine whether a party is entitled to conduct such discovery: (1) the preliminary-injunction-style analysis […] ; or (2) the 'good cause' standard." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (citations omitted). The Fifth Circuit has not expressly adopted either standard, but "several district courts [including the Southern District of Texas] within the Fifth Circuit have expressly utilized the 'good cause' standard." *Id.* (citations omitted). *See Dallas Buyers Club, LLC. v. Ripple,* No. CIV.A. H-14-3393, 2015 WL 1346217, at *1 (S.D. Tex. Mar. 23, 2015); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004).

In determining whether good cause exists, court often consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *St. Louis Grp*, 275 F.R.D. at 240 (citations omitted).

**Discussion**

*TRO*

*(1) likelihood of success on the merits*

Plaintiff alleges that he is likely to succeed on his Exchange Act claims, in which he alleges that "Defendants violated Sections 14(a) and 20(a)[1] of the Exchange Act and Rule 14a-9 by filing the materially incomplete Proxy with the SEC and asking Targa L.P.'s unitholders to

---

[1] Plaintiff notes that only the Section 14(a) claims needs to be considered here, as his Section 14(a) claims are a predicate to his claims under Section 20(a) (Document No. 9 at 3 n.1). Section 20(a) refers to liability of controlling persons and persons who aid and abet violations.

rely on the information contained therein and vote in favor of the Proposed Transaction"
(Document No. 9 at 3).

To state a claim under section 14(a), a plaintiff must allege that: "(1) a proxy statement
contained a material misrepresentation or omission, which (2) caused plaintiffs injury, and (3)
that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was
an essential link in the accomplishment of the transaction." *Pedroli ex rel. Microtune, Inc. v.
Bartek*, 564 F. Supp. 2d 683, 687 (E.D. Tex. 2008) (citation omitted). The Court agrees with
Defendants that "Plaintiff brings claims only under the omission clause of Section 14(a)[2]"
(Document No. 13 at 15). Under element one, "[o]mission of information from a proxy statement
will violate Section 14(a) and Rule 14a–9 if either the SEC regulations specifically require
disclosure of the omitted information in a proxy statement, or the omission makes other
statements in the proxy statement materially false or misleading." *Pedroli*, 564 F. Supp. at 687
(citations omitted). For an *omission* to be material, "there must be a *substantial* likelihood that
the disclosure of the omitted fact would have been viewed by the *reasonable investor* as having
*significantly* altered the 'total mix' of information made available." *Kapps v. Torch Offshore,
Inc.*, 379 F.3d 207, 214 (5th Cir. 2004) (construing Section 11 of the Exchange Act) (emphasis in
original, citations omitted).

Plaintiff alleges that the Targa L.P. Board:

---

[2] Plaintiff repeatedly refers to omissions of material facts throughout his Amended Complaint, but does not allege
misrepresentations:

> Specifically, and as detailed in ¶¶ 48-55 above, the Proxy violates Section 14(a) and Rule 14a-9 because it
> *omits* material facts concerning: (i) the future value of Targa L.P., Targa Corp., and the pro-forma
> company; (ii) certain key inputs and assumptions of the financial analyses performed by Citi in support of
> its fairness opinion; (iii) the financial analyses performed by Citi; and (iv) the value of certain strategic
> alternatives that were considered by the Partnership. […]
>
> The Individual Defendants knew or should have known that the material information identified in ¶¶ 48-55
> above has been *omitted* from the Proxy, rendering the sections of the Proxy identified in ¶¶ 48-55 above to
> be materially incomplete and misleading.[…]
>
> The *omitted* information identified above was reviewed by the Board and the Conflicts Committee prior to
> voting on the Proposed Transaction.

(Document No. 5 at 25-27) (emphases added).

> owed a duty to disclose (1) updated information in light of the radical shift in commodity prices; (2) whether the Conflict Committee's financial advisor treated stock-based compensation as a cash expense and management's projections for stock-based compensation expenses; and (3) the key inputs underlying its Discounted Cash Flow, Selected Public Companies, and Selected Precedent Transactions Analyses.

(Document No. 8-1 at 7). Defendants dispute that they had a duty to update their disclosures, and state that their disclosures were not misleading (Document No. 13 at 13). Furthermore, Defendants dispute that the information requested by Plaintiff is required by law and/or material. *Id*. at 20-24. The court will analyze Plaintiff's three claims below, in sections A, B and C.

A.

As a preliminary matter, Plaintiff filed his claims under Section 14(a) of the Exchange Act; therefore federal law applies to this case. Defendants are not subject to Delaware common law.[3] Plaintiff states that the Targa L.P. Board owed a duty to update information "in light of the radical shift in commodity prices" based upon "a litany of authority hold[ing] that 'a duty to update opinions and projections may arise if the original opinions or projections have become misleading as the result of intervening events'" (Document No. 8-1 at 8) (citing *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 485 (D. Conn. 2013) *aff'd sub nom. Dalberth v. Xerox Corp.*, 766 F.3d 172 (2d Cir. 2014)). Plaintiff includes a lengthy footnote citing case law from various jurisdictions for the duty to update, but Plaintiff does not cite any Fifth Circuit cases finding a duty to update in the 14(a) context. *Id*. at n.3.

Even if Defendants are subject to this "duty to update," the information provided in the proxy statement is not misleading, because "Defendants repeatedly explained that the projections and analyses 'speak only as of the date made' (i.e., October and November of 2015) and 'will not

---

[3] Even if Section 14(a) did not control, Targa L.P., a Delaware partnership, is not "subject to the Delaware common law duty of disclosure," because its Seconded Amended and Restated Agreement of Limited Partnership waives and replaces all common law fiduciary duties, including the so-called "duty of disclosure" (Document No. 13 at 11) (citing Document No. 13-4 at 57).

be updated'" (Document No. 13 at 9) (citing Document No. 13-1 at 51, 32, 63, 54, 77, 78, 80, 82). Defendants are correct that "[t]he authorities cited by Plaintiff found a 'duty to update' only where a defendant is representing that its statements continue to remain current, not where (as here) Defendants disclosed historical information and repeatedly disclaimed any inference that this information would remain current after the date it was created or would be updated" (Document No. 13 at 9). *See*, *e.g. In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("But, in this case, the attributed public statements lack the sort of definite positive projections that might require later correction."); *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998) ("There is also no need to update when the original statement was not forward looking and does not contain some factual representation that remains 'alive' in the minds of investors as a continuing representation."); *In re Bristol-Myers Squibb Sec. Litig.*, No. CIV.A. 00-1990(SRC), 2005 WL 2007004, at *23 (D.N.J. Aug. 17, 2005) ("Most federal circuits have held that there is a duty to update when forward-looking statements still 'alive' in the market have become inaccurate.").

In addition, the changes in commodity prices cited by Plaintiff are all publicly available. Plaintiff's prominent citation for the duty to update, the *Xerox* case, states that, "[b]ecause an alleged misrepresentation or omission must be examined in light of the information available to the market, no securities law disclosure violation can occur when information allegedly omitted from a corporation's public disclosures is already available to the market." 935 F. Supp. 2d at 488 (analyzing disclosure in the Section 10b-5 context).

The Fifth Circuit standard for a duty to disclose is similar to the duty to update, described above. In the Fifth Circuit there is "no duty to disclose in the prospectus all information material to the offering, but [there is a duty to disclose] only that material information necessary to make

the statements in the prospectus not misleading and that material information specifically required by the securities laws to be included." *Kapps*, 379 F.3d at n.6 (citing *Oxford Asset Management Ltd. v. Jaharis*, 297 F.3d 1182, 1190 (11th Cir. 2002)). However, as described above, the statements in the proxy statement were not misleading, and Plaintiff cannot demonstrate that an update was required by Section 14(a). Therefore Defendants' failure to either update or disclose changes in commodity prices is not a violation of Section 14(a). *Pedroli*, 564 F. Supp. at 687.

B.

Plaintiff also states that "[t]he Definitive Proxy does not disclose whether Citi[4] treated stock-based compensation as a cash expense" (Document No. 8-1 at 10). Plaintiff does not argue that Section 14(a) requires that this information be disclosed, but Plaintiff cites three cases from the Delaware Court of Chancery for the proposition that it should be included in the proxy statement. Even assuming that Delaware law applies here, the three cases cited by Plaintiff are inapposite. Two of these cases are "appraisal decisions" in which the Court of Chancery "treated stock-based compensation as an expense in valuing a company." *Id.* (citing *Merion Capital LP v. BMC Software, Inc.*, No. CV 8900-VCG, 2015 WL 6164771, at *10 (Del. Ch. Oct. 21, 2015); *In re Appraisal of Ancestry.com, Inc.*, No. CV 8173-VCG, 2015 WL 399726, at *22 (Del. Ch. Jan. 30, 2015)). These cases are not directly relevant to the merger context of the case at hand.

In the third case cited by Plaintiff, a plaintiff argued that defendants treated stock-based compensation inconsistently in their proxy statement. *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. CIV.A. 5002-CC, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009). Therefore the Court of Chancery granted the plaintiff's motion to expedite, because the differing methods were not "disclosed or otherwise highlighted in the relevant proxy statement."

---

[4] The investment bank handling the transaction.

*Id*. Plaintiff does not allege a similar situation here, making this case irrelevant. Therefore Plaintiff has failed to demonstrate that omission of the treatment of stock-based compensation from the proxy statement violates Section 14(a), or Delaware law. Nor does Plaintiff allege that the omission of this information "makes other statements in the proxy statement materially false or misleading." *Pedroli*, 564 F. Supp. at 687. Therefore Plaintiff is unlikely to succeed on this aspect of his 14(a) claim.[5]

Plaintiff uses the same three cases to support his contention that Defendants also must disclose "management's projections for stock-based compensation" (Document No. 8-1 at 10). As described above, this information is not required by law, and Plaintiff again does not allege that its absence from the proxy statement "makes other statements in the proxy statement materially false or misleading." *Pedroli*, 564 F. Supp. at 687. Therefore Plaintiff is unable to demonstrate a Section 14(a) violation.

Defendants also respond that there is no evidence that this particular information exists,[6] and state that "[t]he Proxy contains detailed information concerning stock-based compensation for Targa LP's named executives, and an explanation of the Proposed Merger's effect on these equity awards" (Document No. 13 at 29) (citing Document No. 13-1 at 9, 13, 92-94, 105-06, F-1). Defendants also state that "robust information concerning Targa LP's and Targa Corp.'s stock-based compensation is available in numerous other SEC filings. *Id*. (citing Document Nos.

---

[5] Even if Plaintiff is correct that "financial experts disagree regarding whether it is appropriate to treat stock-based compensation as an expense," and therefore this information is material, the Fifth Circuit has stated that "all material information need not be included in the registration statement." *Kapps*, 379 F.3d at 213 (construing Section 11 of the Exchange Act). The information only must be included if required by law or necessary to prevent other statement from being misleading. *Id*

[6] "Under Delaware law, there is no obligation on the part of a board to disclose information that simply does not exist." *In re JCC Holding Co., Inc.*, 843 A.2d 713, 721 (Del. Ch. 2003). Thus Plaintiff's reliance on Delaware law is further misplaced.

13-5[7], 13-6[8]). Therefore the Court agrees that, even if the proxy statement disclosed the additional information requested by Plaintiff, this data would not be material, as it would not significantly alter the "total mix" of information already available. *Kapps*, 379 F.3d at 214.

C.

Plaintiff alleges that "[t]he Definitive Proxy fails to disclose the key inputs to Citi's Discounted Cash Flow, Selected Public Companies, and Selected Precedent Transactions Analyses," citing the Delaware Chancery Court for the proposition that "the key inputs to the valuation methods used to derive a financial advisors' fairness opinion must be disclosed" (Document No. 8-1 at 6) (citing *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 204 (Del. Ch. 2007)). Plaintiff believes the following information is required:

> Regarding Citi's "Discounted Cash Flow Analyses," the Proxy fails to disclose (a) the identity, quantity, and source of the weighted average cost of capital assumptions for both companies; (b) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; and (c) whether stock-based compensation was treated as a cash or non-cash expense.
> Regarding Citi's "Selected Public Companies Analyses," the Proxy fails (a) to display the observed company-by-company pricing multiples and financial metrics examined by Citi; and (c) to disclose if other multiples were examined (if so, they should be disclosed).
> Regarding Citi's "Selected Precedent Transactions Analysis," the Proxy fails to disclose (a) the observed transaction-by-transaction (i) enterprise values, (ii) pricing multiples, and (iii) financial metrics; and (b) whether other multiples and/or transaction premiums were examined (if so, they should be disclosed).

(Document No. 5 at 23-24). However, Delaware law does not apply here, and Plaintiff does not argue that federal law requires disclosure of this information. Even if Delaware law did apply, Plaintiff's reliance on *Netsmart* is misplaced. The Court in *Netsmart* issued an injunction "until such time as the Netsmart board discloses additional information, to wit, the full November 18,

---

[7] This is a Targa L.P.'s 10-k, which includes a section on "Long-Term Equity Incentive Awards" beginning on page 13.
[8] This is a Targa Corp.'s 10-k, which also includes a section on "Long-Term Equity Incentive Awards" beginning on page 12.

2006 William Blair revenue and earnings projections including the years 2010 and 2011." 924 A.2d at 209. In *Netsmart*, Blair presented final projections used in the fairness opinion to the board, but those projections were not disclosed in the proxy statement; the proxy statement actually disclosed two sets of projections not ultimately used in the fairness opinion. *Id*. at 202. The disclosure of projections *not actually used* was therefore misleading. Here, Plaintiff does not allege that the information in the proxy statement is misleading; Plaintiff simply requests additional information.

The Chancery Court reiterated after *Netsmart* that, "a disclosure that does not include all financial data needed to make an independent determination of fair value is not ... *per se* misleading or omitting a material fact. The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis." *In re CheckFree Corp. Shareholders Litig., No*. CIV.A. 3193-CC, 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007) (citations omitted, emphasis in original). Shareholders are merely entitled to "a fair summary of the substantive work performed by the investment bankers upon whose advice their board relied in reaching their recommendation as to a tender offer;" the law distinguishes between material information and "immaterial minutia." *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511 (Del. Ch. 2010). As the Chancery Court found in *Cogent*, the proxy statement includes a "plethora[9] of

---

[9] Defendants list the information provided in the proxy statement as follows (citing to page numbers of the proxy statement, Document No. 13-3):

> A bullet point list of Citi's methodologies in analyzing Targa LP, Targa Corp., and the Proposed Merger (id. at 78); • A description of the assumptions Citi made in performing its analyses (id. at 78-79); • A description of certain limitations of Citi's analyses, such as the fact that Citi analyzed the Proposed Merger only from a financial perspective and not, for example, based on the comparative legal rights of Targa Corp. shares vis-à-vis Targa LP units (id. at 79); • Multiple disclosures that the Proxy contained a "summary of [Citi's] analyses" and "not a complete description of Citi's opinion or the analyses underlying, and factors considered in connection with, Citi's opinion" (id. at 80-81); • A description of how Citi calculated the implied exchange ratio reference ranges in its analyses (id. at 80-81); • A four-page summary of Citi's "Selected Public Companies Analyses," including Citi's methodology for selecting comparable public companies, the comparable companies chosen as a result of this methodology, the financial metrics for which Citi compared Targa LP and Targa Corp. to their respective comparable companies, the unit and share price ranges implied by the comparable company financial metrics, and the

facts" relating to Citi's analysis. *Id.* Considering the amount of information already provided, it is unlikely that the data requested by Plaintiff would significantly alter the "total mix" of information already available. *Kapps*, 379 F.3d at 214.

As described in the above sections, Plaintiff cannot demonstrate Section 14(a) violations as to the board's duty to disclose (1) updated data due to changes in commodity prices, (2) data relating to stock-based compensation, or (3) inputs used by Citi in various analyses. Therefore Plaintiff is unlikely to succeed on the merits.

*(2)  irreparable injury*

Plaintiff alleges that "Plaintiff and Targa L.P.'s other unitholders will suffer irreparable harm by being forced to decide how to vote on the Proposed Transaction without material information" (Document No. 9 at 4). As described above, the information sought by Plaintiff is not required by Section 14(a), and is also largely immaterial. Furthermore, the general public is already aware of the drops in commodity prices. Therefore the supposed threat that Plaintiff or other unitholders will be forced to make an uninformed decision is nonexistent.

The Court also agrees with Defendants that Plaintiff has "created—or, at the very least, exacerbated—the purported irreparable harm by waiting until the eleventh hour to seek a

---

merger exchange ratio range implied by these price ranges (id. at 81-84); • A two-page summary of Citi's "Selected Precedent Transactions Analysis," including Citi's methodology for selecting precedent transactions, the precedent transactions chosen as a result of this methodology, the financial metrics Citi analyzed for each transaction, the unit and share price ranges implied by the precedent transaction metrics, and the merger exchange ratio range implied by these price ranges (id. at 84-85); • A summary of Citi's "Discounted Cash Flow Analyses," including Citi's methodology for performing these analyses and calculating terminal values, the unit and share price ranges implied by these calculations, and the merger exchange ratio range implied by these price ranges (id. at 85-86); • A summary of Citi's "Has/Gets" analyses, including an explanation of this analytical method, the data Citi used in performing these analyses, and the estimated pro forma equity prices for Targa LP unitholders and Targa Corp. shareholders that was implied by these analyses (id. at 86-87); • A summary of Citi's analyses of the estimated distributions to Targa LP unitholders and Targa Corp. shareholders in the stand-alone (no merger) and pro-forma (post merger) worlds (id. at 87); • A summary of the other financial metrics analyzed by Citi in reaching its opinion concerning the financial fairness of the Proposed Merger (id. at 88); and • A description of Citi's business relationship with Targa LP and Targa Corp., including the fees Citi has received for advising each company in the two years preceding the Proposed Merger (id. at 88).

temporary restraining order," as Plaintiff "filed this Motion almost three months after the announcement of the Proposed Merger and two months after Targa LP filed the preliminary proxy" (Document No. 13 at 25). Plaintiff, however, insists that "time is of the essence," because the Unitholder Vote is scheduled for February 12, 2016 (Document No. 9 at 2).

> The specific timeline of events is as follows:
>
> November 3, 2015: Targa LP and Targa Corp. announce the Proposed Merger.
> December 3, 2015: Targa LP and Targa Corp. file preliminary proxy.
> January 6, 2016: Plaintiff files suit without requesting a temporary restraining order.
> January 11, 2016: Targa LP and Targa Corp. file a definitive proxy.
> January 25, 2016: Plaintiff files the Motion. [for a TRO]
> February 12, 2016: Targa LP unitholder and Targa Corp. shareholder meetings to vote on the Proposed Merger.

(Document No. 13 at 5). The Court agrees that Plaintiff has exacerbated the irreparable harm by waiting to file his TRO motion until almost two months after the filing of the preliminary proxy statement[10], especially because the crude oil and natural gas prices cited by Plaintiff have been falling at least since late November/early December, according to data provided by Plaintiff (Document No. 5 at 22). In addition, Plaintiff delayed nearly 20 days after filing suit, and nearly 15 days after the issuance of the definitive proxy statement, to file this motion for a TRO. These facts weigh "heavily" against a finding of irreparable injury. *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (citing *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006)).

*(3) balance of equities*

Plaintiff states that, "[g]iven that Plaintiff only seeks an order enjoining the Unitholder Vote until Defendants provide Targa L.P.'s unitholders with the material information discussed above, the balance of equities heavily weigh in Plaintiff's favor" (Document No. 9 at 6). "Absent

---

[10] Plaintiff filed suit before the issuance of the definitive proxy statement, suggesting that Plaintiff did not need to wait for its release in order to file.

injunctive relief, Plaintiff and Targa L.P.'s other unitholders will be forced to make a decision about how to vote on the Proposed Transaction without material information," whereas "any required postponement of the Unitholder Vote would only delay the consummation of the Proposed Transaction – if at all – for only so long as would be necessary for the unitholders to digest the newly disclosed information." *Id*. at 6-7. As described above, the information sought by Plaintiff is not required by law and is largely not material. Therefore unitholders are not in danger of making an uninformed decision. Furthermore, the potential delay of the merger is a much heavier burden than Plaintiff admits, and a delay would be likely, as the vote is set to take place in approximately two weeks. This factor weighs against Plaintiff.

*(4) public interest*

Plaintiff states that "a fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act [ ] is in the best interests of shareholders and the shareholding public generally" (Document No. 9 at 6) (citing *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2012 WL 5270125, at \*6 (N.D. Cal. Oct. 23, 2012)). However, as described above, the proxy statement is in accordance with federal law. Furthermore, delaying the vote would give Plaintiff undue influence over the proxy process, harming other unitholders and the general public interest. This factor weighs against Plaintiff.

Plaintiff does not carry his burden on any of the four factors relevant to issuing an injunction/TRO. Therefore the Court will deny Plaintiff's Motion for a TRO.

*Expedited Discovery*

Plaintiff alleges that "because Plaintiff anticipates filing a preliminary injunction motion to enjoin the consummation of the Proposed Transaction, and seeks discovery necessary to prepare for it, factors one and three weigh in Plaintiff's favor" (Document No. 8-1 at 14).

Plaintiff also states that "[f]actors two and four also clearly weigh in Plaintiff's favor. Plaintiff's discovery requests are narrowly tailored to the issues that he anticipates raising in a preliminary injunction motion, and Defendants are therefore unlikely to face any burden in responding to them." *Id*. Specifically, Plaintiff seeks production of "core" documents, "including Board meeting minutes & presentations reviewed at the meetings, Targa LP financial projections including unlevered free cash flows, and Citi's engagement letter. Plaintiff also seeks to depose three individuals most knowledgeable about the Merger - a representative from Citi, one of Targa LP's non-management directors, and Targa LP's CFO." *Id*. at 14, n.5. Additionally, Plaintiff argues that his "requests are not burdensome because the documents he seeks are readily available to Defendants and have likely already been gathered and organized in connection with the Board's review of the Proposed Transaction and preparation of the Proxy." *Id*. at 15. Lastly Plaintiff states that, although he has requested discovery fairly far in advance of the typical discovery process, this is necessary so that Plaintiff can obtain the proposed discovery before the unitholder vote on February 12, 2016 at 9:00 A.M. *Id*. at 15.

In fact, the additional information that Plaintiff seeks is extremely broad, because Plaintiff's requests go beyond the plethora of information already available to Plaintiff in the proxy statement and other SEC filings, and because Plaintiff seeks information which is not required by law and which is largely immaterial.

Plaintiff's request is also burdensome. Plaintiff states that the bulk of his desired information is readily available, however Plaintiff seeks depositions as well as data updated to reflect commodity prices, both of which do not already exist. The burden would be on Defendants to produce these people/documents. Also, any delay of the merger would be highly burdensome to Defendants.

Lastly, Plaintiff seeks this additional information for a futile purpose. As described above, the court has already found that Plaintiff fails to meet the high burden for a TRO or an injunction. The majority of factors determining good cause weigh heavily against Plaintiff; therefore the Court finds Plaintiff should not be awarded expedited discovery.

**Conclusion**

The Court hereby

ORDERS that Plaintiff's Motion to Expedite Discovery (Document No. 8) is DENIED and that Plaintiff's Motion for a TRO (Document No. 9) is DENIED.

SIGNED at Houston, Texas, this 29th day of January, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE